UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **TIMOTHY L. BROWNING,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 10-2268 |
| | ) |
| **CHRISTOPHER AIKMAN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

# ORDER

In December 2010, Plaintiff Timothy L. Browning, acting *pro se*, filed a Complaint (#1) against multiple officers of the Champaign Police Department.  Plaintiff alleges that, in the course of arresting him, the officers released a dog on him, and he was bitten several times.  Plaintiff also alleges that the officers made racist comments to him throughout the incident, indicating that his arrest was racially motivated.  The Court construes these allegations as claims for violation of equal protection under the Fourteenth Amendment, unconstitutional arrest under § 1983, and excessive force under § 1983.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In June 2011, Defendants filed a Motion for Summary Judgment (#30).  In August 2011, Plaintiff also filed a Motion for Summary Judgment (#35).  Defendants filed Defendants' Response to Motion for Summary Judgment (#36).  After reviewing the parties' pleadings, memoranda, and evidence, this Court **GRANTS** Defendants' Motion for Summary Judgment **(#30)**.

## I.  Background

Plaintiff was arrested in November 2009 for possession of heroin, and was later convicted.  Plaintiff's claims against various officers of the Champaign Police Department involve events that allegedly took place throughout the course of this arrest.

Plaintiff was a passenger in a vehicle driven by Elmore LeShoure. Defendant Lieb first noticed the vehicle back out of the driveway of a residence that police knew or suspected was a drug house. (#30, p. 4, ¶ 17). Defendant Lieb checked the registration of the vehicle and learned that the owner was on parole for delivery of cocaine. (#30, p. 4, ¶ 17). The vehicle left the residence along with two other cars. (#30, p. 5, ¶ 19). Defendant Lieb suspected that the occupants of the vehicles were transporting narcotics, based on his knowledge that traveling together is a common strategy, such that one or two cars can acts as decoys and get the attention of police, while the vehicle carrying the narcotics goes undetected. (#30, p. 5, ¶ 21). Defendant Lieb observed that all three vehicles failed to make a complete stop before turning right at an intersection controlled by a four-way stop. (#30, p. 5, ¶ 20). At that point, Defendant Lieb asked Defendant Aikman and Defendant Coon to stop LeShoure's vehicle for this traffic violation, and noted he suspected that the occupants of the vehicles possessed narcotics. (#30, p. 5, ¶ 21).

Then, as requested by Defendant Lieb, Defendant Aikman initiated the traffic stop, pulling over LeShoure's vehicle and another vehicle. Defendant VanAntwerp assisted Defendant Aikman. While Defendant Aikman spoke with LeShoure, Defendant Iverson, a canine officer, began walking around the cars with his canine partner, "Tango," who was trained to alert the officers about the odor or presence of illegal drugs. (#30, p. 6, ¶ 24). Tango indicated that he detected the odor of drugs in both vehicles. (#30, p. 6-7, ¶ 27, 28). Defendant Iverson told Defendant Aikman that Tango had detected drugs. (#30, p. 7, ¶ 31). At that point, Defendant Aikman, standing by the driver's side, asked LeShoure to step out of the car. Defendant VanAntwerp, standing by the passenger's side, asked Plaintiff to step out of the car.

At this juncture, Plaintiff's version of events begins to diverge from Defendants' version of events. Plaintiff alleges that Defendant Aikman patted him down. Plaintiff alleges that, as he was doing this, Defendant Aikman said, "all black people act the same, so he knows I have something on me," and "all you people think alike," and "monkey-coon people never act right." (#1, p. 5). Plaintiff also alleges that the police told him to run. (#1, p. 5). Plaintiff indicates that he attempted to run, but that Defendant Aikman had a grip on him, so he was not able to run.

Then, Plaintiff says that Defendants released the dog on him and allowed the dog to bite him uncontrollably, while they held him down, maced him, and kicked him. (#1, p. 5-6).

Defendants describe the incident much differently. Defendants note that Defendant VanAntwerp began to pat down Plaintiff, and removed two cell phones from his clothes. (#30, p. 8, ¶ 33-35). Then, Defendant Aikman patted down Plaintiff's legs, and felt a hard object in the area of Plaintiff's inner left leg, which Defendant Aikman thought could be a concealed weapon. (#30, p. 8, ¶ 35).[1] As the officers began to place Plaintiff's hands behind his back to place handcuffs on Plaintiff, both Defendant Aikman and Defendant VanAntwerp noticed that Plaintiff began to tense up, and he made a fist with his right hand. (#30, p. 8, ¶¶ 37-40). He struck Defendant Aikman in the forearm and started running. (#30, p. 8, ¶ 40).

At this point Defendant Iverson commanded Tango to apprehend Plaintiff. The scuffle that took place next all happened in less than a minute. (#30, p. 11, ¶ 59). Tango bit Plaintiff at least twice, and Plaintiff also struck Tango repeatedly. (#30, p. 9, ¶¶ 43-44). Defendants Aikman, Antwerp, and Iverson managed to get Plaintiff on the ground, as Plaintiff continued to struggle, punch the dog, and attempt to get up. (#30, p. 9, ¶¶ 43-48). Defendant Aikmen then sprayed Plaintiff in the face with pepper spray, forced his hands behind his head, and placed handcuffs on him. *Id.* After Plaintiff was handcuffed, Officer Iverson immediately called for an ambulance. (#30, p. 9, ¶ 50).

The Court notes that the entire incident was recorded, with both audio and video, from cameras in the officers' squad cars. These recordings have been submitted in to evidence as Group Exhibit 6. The Court has viewed these exhibits. The quality of the audio and video are both good, such that it seems that everything that was said can be heard on the tapes. From the tapes, no Defendant can be heard making any racial comments as Plaintiff has alleged. Plaintiff acknowledges this, and notes that "While there may be video and audio, it will not show all that

---

[1] After the fact, Defendants found and removed heroin and crack cocaine from the seat of Plaintiff's pants, and some of those drugs were inside a pill bottle. (#30, p. 10, ¶ 51).

happened." (#35, p. 1). Furthermore, the tapes depict a sequence of events consistent with Defendants' version of events. (#31, Ex. 6).

## II. Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). A factual dispute is material only if its resolution might affect the outcome of the suit under governing law. *Id*. The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Furthermore, the Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex*, 477 U.S. at 322-23.

The Court is cognizant of its special obligation with respect to a *pro se* litigant. The Seventh Circuit has described a court's role as insuring that the claims of a *pro se* litigant are given fair and meaningful consideration. *Madyun v. Thompson*, 657 F.2d 868, 876 (7th Cir. 1981). A *pro se* plaintiff is entitled to a great deal of latitude where procedural requirements are concerned. *Haines v. Kerner*, 404 U.S. 519, 519-20 (1972). In the Central District of Illinois, a *pro se* plaintiff need not comply with the specific technical requirements described in Rule 7.1(D) of the Local Rules when responding to a summary judgment motion. CDIL-LR 7.1(D)(6). Nevertheless, to avoid summary judgment, the plaintiff must provide admissible evidence establishing his claim or setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County*, 259 F.3d 842, 845 (7th Cir. 2001).

### III.  Discussion

Based on Plaintiff's allegations, this Court will consider whether Plaintiff has made a prima facie case for violation of equal protection under the Fourteenth Amendment, unconstitutional arrest under § 1983, or excessive force under § 1983.

*A.  Equal Protection*

If police officers utilize impermissible racial classifications in determining whom to stop, detain, and search, this amounts to a violation of the Equal Protection Clause of the Fourteenth Amendment.  *Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001).  To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose.  *Id*. at 636.  To prove discriminatory effect, plaintiffs are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class.  *Id*.  To prove discriminatory intent, plaintiffs must show that the decisionmakers in their case acted with a discriminatory purpose.  *Id*. at 645.

With respect to discriminatory effect, Plaintiff's argument is undeveloped.  There is no indication of what, specifically, Defendants did to Plaintiff that they would not have done to another individual suspected of possessing narcotics, given all of the surrounding facts and circumstances.

With respect to discriminatory intent, the Seventh Circuit has noted that, while no court would approve racially insensitive remarks by police officers, such comments do not by themselves violate the Constitution.  *Chavez*, 251 F.3d at 646.  However, such language may be strong evidence of racial animus, establishing an essential element of an equal protection claim.  *Id*.  In this case, Plaintiff has alleged that Defendant Aikman made several explicitly racially derogatory comments to Plaintiff.  However, as the Court previously noted, there is audio and video tape of this incident, and the tapes do not support Plaintiff's claim that Defendant Aikman made these statements.  (#31, Ex. 6).  In his deposition, Plaintiff repeatedly refused to answer

5

questions about what Defendant Aikman said to him, repeatedly answering such questions by indicating he would not answer without an attorney.  (#30-2, pp. 1, 3, 4; #30-3, p. 6).  At this stage in litigation, Plaintiff may not rest upon mere allegations in the pleadings.  *Celotex*, 477 U.S. at 322-23.  Therefore, a jury could not reasonably find that any Defendant acted with discriminatory intent.

The Court concludes that a jury could not reasonably find that Defendants' actions had a discriminatory effect, or that any Defendant acted with a discriminatory intent.  The Court therefore grants summary judgment in favor of Defendants with respect to Plaintiff's claim for violation of the Equal Protection Clause.

*B.  Unconstitutional Arrest*

Plaintiff indicates that Defendant Aikman told him "all black people act the same, so he knows I have something on me."  (#1, p. 7).  The Court construes this as a claim that Defendants lacked probable cause to arrest Plaintiff, and that rather Defendant Aikman arrested Plaintiff due to unreasonable suspicion based on Plaintiff's race.

Probable cause is a complete defense to a § 1983 unconstitutional arrest claim brought under the Fourth Amendment.  A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to commit a crime.  *Holmes v. Village of Hoffman Estate*s, 511 F.3d 673, 679 (7th Cir. 2007).  "Probable cause is assessed objectively:  a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest."  *Id*.  In making this objective assessment regarding probable cause, a court must consider the facts as they reasonably appeared to the arresting officer.  *Id*.  "A police officer may of course exercise common sense and draw upon his training and experience in evaluating the totality of the circumstances confronting him, and a court must likewise make allowance for such judgments in deciding what the arresting officer reasonably might have concluded about the facts."  *Id*.  The determination of probable cause is normally a mixed question of law and fact, but when factual

6

questions are not at issue, the ultimate resolution of probable cause is a question of law. *United States v. Ellis*, 499 F.3d 686, 688 (7th Cir. 2007).

In this case, Defendant Aikman and other officers knew of many facts and circumstances that supported a belief that Defendant possessed illegal drugs. First, Tango had alerted them to the odor of drugs in the car, in which Plaintiff was a passenger. Furthermore, Plaintiff had come from a house suspected of being a drug house, the owner of the vehicle was on parole for delivering cocaine, and the vehicle had left the drug house with two other cars, which the officers knew to be a common tactic to distract police from the car containing drugs. This Court concludes that Defendant Aikman and the other officers had probable cause to arrest Plaintiff.

In conclusion, the Court grants summary judgment for Defendants with respect to Plaintiff's § 1983 claim for unconstitutional arrest.

C. Excessive Force

Plaintiff brings a § 1983 claim for excessive force, based on the injuries he sustained from Tango biting him on his stomach and on the back of his leg.

In general, the use of excessive force to effect an arrest is evaluated under the Fourth Amendment reasonableness standard, assessing the objective facts which confronted an officer at the time and taking in to account the severity of the crime at issue, the immediate threat to the safety of the officers or others posed by the suspect, and the resistence of the suspect, including active resistance or attempting to resist arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). In addressing the use of trained dogs to apprehend suspects, the Seventh Circuit has indicated that the practice is not unconstitutional *per se*, but also that it is not automatically reasonable in every circumstance. *Johnson v. Scott*, 576 F.3d 658, 661 (7th Cir. 2009). In *Johnson*, the Seventh Circuit determined that use of the dog was reasonable, especially because the plaintiff was a suspect in a shooting, he had recklessly fled from police in a vehicle and then on foot, and he was likely armed. *Id*. at 660.

The Northern District has considered a case that is factually analogous to the case at bar. *See Tilson v. City of Elkhart*, 317 F.Supp.2d 861 (N.D. Ill. 2003). In *Tilson*, the court determined on summary judgment that the police had not used excessive force by releasing a dog to effect an arrest of a plaintiff who had fled from police after being pulled over for suspected driving while intoxicated. *Id*. at 867. In that case, the court noted that the plaintiff had begun running toward a house, increasing the potential dangers to others arising from the situation. *Id*. Similarly, in this case, Plaintiff ran from police after being pulled over, he was suspected of a felony, and public safety was a concern, as the incident took place near a nightclub where a crowd of people had gathered. (#30, p. 7, ¶ 30).

The Court concludes that the use of a dog to assist in apprehending Plaintiff was objectively reasonable under the circumstances. The Court, therefore, grants Defendants' motion for summary judgment with respect to Plaintiff's claim for excessive force.

*D. Qualified Immunity*

Defendants argue that even if a constitutional violation did occur, the Defendants' conduct did not violate clearly established standards under existing case law, and therefore the individual officers would be entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

The Court does not believe that a constitutional violation occurred. However, even if a constitutional violation did occur, the Defendants' conduct in this case did not violate clearly established standards under existing case law. Therefore, all of the individual Defendants would be entitled to qualified immunity.

## IV.  Summary

For the reasons discussed above, this Court hereby **GRANTS** Defendants' Motion for Summary Judgment **(#30)**.  The Clerk of Court is directed to terminate this case.

ENTER this 27th day of March, 2012.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE